Sondra A. HOLLIDAY, Petitioner,

v.

BESTOP, INC.; Colorado Compensation Insurance Authority; and The Industrial Claim Appeals Office, Respondents.

No. 99SC742.

Supreme Court of Colorado, En Banc.

May 14, 2001.

As Modified on Denial of Rehearing June 4, 2001.

Wilcox & Ogden, P.C., Ralph Ogden, Denver, CO, Joan W. Froede, P.C., Joan W. Froede, Louisville, CO, Attorneys for Petitioner.

Curt Kriksciun, Colorado Compensation Insurance Authority, doing business as Pinnacol Assurance, Denver, CO, Attorneys for Respondents Bestop, Inc., and Colorado Compensation Insurance Authority, doing business as Pinnacol Assurance.

Scott A. Meiklejohn, LLC, Scott A. Meiklejohn, Denver, CO, Attorney for Amicus Curiae Workers Compensation Education Association.

Justice BENDER delivered the Opinion of the Court.

■ This appeal involves an aspect of a workers' compensation statute that penalizes a person who disobeys an order of the director or panel. We construe section of 8–43–304(1), 3 C.R.S. (2000), to define four categories of conduct for which a person is subject to sanctions. We determine that the limiting phrase "for which no penalty has been specifically provided" contained in this statute does not modify the category of disobeying a lawful order. Hence, we hold that this statute provides penalties for persons who fail, neglect, or refuse to obey a lawful order of the director or panel, even though this same conduct could be sanctioned by a different penalty section in Colorado's Workers' Compensation Act.

In this case, the court of appeals in *Holliday v. Industrial Claim Appeals Office*, 997 P.2d 1212 (Colo.App.1999), extended the reasoning of an earlier court of appeals case, *Sears v. Penrose Hospital*, 942 P.2d 1345 (Colo.App.1997), to hold that the limiting phrase in the statute does apply to the category of disobeying a lawful order. We expressly disapprove of the court of appeals' reasoning in *Holliday* and, to the extent that the reasoning of *Sears* is inconsistent with the holding we announce today, we also disapprove of that case.

■ Although we disapprove of the court of appeals' reasoning in this case, we hold that the claimant, the petitioner before us, is not entitled to penalties under section 8–43–304(1) because she failed to preserve for appeal the issue of whether her employer violated a lawful order of the director or panel. Thus, we dismiss her appeal.

## I. FACTS AND PROCEEDINGS BELOW

Petitioner Sondra A. Holliday (claimant) suffered a compensable injury on March 2, 1994 while working for respondent Bestop, Inc. Before a hearing, the claimant, along with respondent Bestop, Inc. and its insurer, respondent Colorado Compensation Insurance Authority, (collectively the employer) participated in a pretrial/settlement conference conducted by a Prehearing Administrative Law Judge (PALJ). At this conference, the parties agreed to have the claimant evaluated by Dr. Judy Lane. The parties also agreed that the employer would pay for this evaluation and that, if Dr. Lane concluded that the claimant's headaches and other symptoms were a result of the workplace accident, then the employer would pay for treatment ordered by Dr. Lane. In return, the claimant agreed to postpone the upcoming hearing.

The PALJ's "conference summary sheet" from this conference notes that "[the employer] offer[s] eval[uation] & treatment w/ Judy Lane, M.D. If [the claimant] accepts, parties agree to strike & reset 30–45 days from 3/4/97." None of the parties were given a copy of this conference summary sheet after the conference. The sheet only came to the parties' attention much later in the litigation, when counsel for the Division of Worker's Compensation attached it to a motion to quash the claimant's subpoena requesting that the PALJ testify about the pretrial conference. Following the pretrial conference, no party requested that the PALJ enter an order or submitted any proposed order for the PALJ's signature.

After examining the claimant, Dr. Lane issued a report, dated March 31, 1997, in which she concluded that the claimant's chronic daily headaches were "[r]elated to injury March 2, 1994." Dr. Lane then stated that she would be willing to treat the claimant, and recommended a course of treatment. Claimant's counsel then contacted employer's counsel, formally requesting authorization for the recommended treatment. Employer's counsel, however, denied that the employer had authorized further treatment.

Administrative Law Judge (ALJ) Martin D. Stuber then held hearings on, among other things, the question of whether the employer had agreed to authorize treatment. In a June 16, 1997 "Summary Order," ALJ Stuber found that the respondents authorized treatment by Dr. Lane and thus made the following order: "[r]espondent-insurer shall pay for the treatment provided by Dr. Lane, as stipulated." Because ALJ Stuber found against the claimant on other issues, the claimant requested specific findings of fact, which ALJ Stuber issued on July 14, 1997. There, ALJ Stuber repeated verbatim his order that the employer pay for Dr. Lane's treatment as stipulated.

The claimant then sought penalties under section 8–43–304(1)[1] for the employer's failure to provide the recommended treatment in violation of the agreement reached in the pretrial/settlement conference before the PALJ. The employer objected to the penalty request, arguing that the claimant had not set forth sufficient facts for a penalty under section 8–43–304(1). ALJ Stuber determined that the claimant's claim was barred by the court of appeals' holding in *Sears*.

In that case, the employer, who was required to pay continuing medical benefits to the claimant, denied payment of a bill it received from the claimant for an HIV test. *Sears*, 942 P.2d at 1346. The claimant therefore sought penalties under section 8–43–304(1). *Id.* Focusing on the limiting phrase "for which no penalty has been specifically provided" appearing in the middle of section 8–43–304(1), the court of appeals held that "where the gravamen of the disputed conduct is a violation of the Act or a violation of a rule enacted by the director, the penalty set forth in § 8–43–304(1) applies only when the Act does not create a specific penalty for the violation." *Id.* at 1347.

The *Sears* court therefore turned to the question of whether a specific penalty applied to the employer's refusal to pay for the HIV test. *Id.* The court noted that another statute, section 8–43–401(2)(a), 3 C.R.S. (2000), specifically penalizes the failure to pay medical benefits.[2] *Id.* Comparing the two statutes, the *Sears* court reasoned that because the "gravamen" of the claimant's claim was the late payment of medical benefits, and because section 8–43–401(2)(a) specifically

---

1. That section provides:

   Any employer or insurer, or any officer or agent of either, or any employee, or any other person who violates any provision of articles 40–47 of this title, or does any act prohibited thereby, or fails or refuses to perform any duty lawfully enjoined within the time prescribed by the director or panel, for which no penalty has been specifically provided, or fails, neglects, or refuses to obey any lawful order made by the director or panel or any judgment or decree made by any court as provided by said articles shall be subject to such order being reduced to judgment by a court of competent jurisdiction and shall also be punished by a fine of not more than five hundred dollars per day for each such offense, seventy-five percent payable to the aggrieved party and twenty-five percent to the subsequent injury fund created in section 8–46–101.

   § 8–43–304(1), 3 C.R.S. (2000).

2. That statute provides, in pertinent part:

   After all appeals have been exhausted or in cases where there have been no appeals, all insurers and self-insured employers shall pay benefits within thirty days of when any benefits are due. If any insurer or self-insured employer *willfully delays payment of medical benefits* for more than thirty days or willfully stops payments such insurer or self-insured employer shall pay a penalty to the division of eight percent of the amount of wrongfully withheld benefits.

   § 8–43–401(2)(a), 3 C.R.S. (2000) (emphasis added).

   Penalties under this statute are quite different from those imposed under section 8–43–304(1). The penalty under section 8–43–401(2)(a) is eight percent of the amount of wrongfully withheld benefits, payable to the division. In contrast, section 8–43–304(1) authorizes the imposition of a fine of not more than five hundred dollars per day for each offense, seventy-five percent payable to the aggrieved party and twenty-five percent to the division's "subsequent injury fund."

addressed that circumstance, the claimant could not seek penalties under section 8–43–304(1) because penalties were elsewhere specifically provided. *Id.*

In the present case, following the court of appeals' holding in *Sears*, ALJ Stuber concluded that "[s]ince the gravamen of the penalty claim is for nonpayment of medical bills, no section 8–43–304 ... penalty can be awarded." ALJ Stuber therefore denied and dismissed the claimant's section 8–43–304(1) claim.

The claimant filed a petition to review this order, claiming that the order misconstrued the basis of her claim. She alleged that she did not seek a penalty for nonpayment of medical bills, but instead sought a penalty for failure to provide medical benefits pursuant to the stipulation with the employer. ALJ Stuber agreed, set his order aside, and allowed the claimant to apply for a hearing on the penalty issue.

The claimant did so, and the employer filed two motions for summary judgment. In responding to these motions, the claimant focused her argument on that part of section 8–43–304(1) penalizing the failure, neglect, or refusal to obey a lawful order of the director or panel. The claimant argued that the PALJ's "conference summary sheet" constituted an order of the PALJ, which under the Act is an order of the director. *See* § 8–43–207.5(3), 3 C.R.S. (2000) ("[a]n order entered by a prehearing administrative law judge shall be an order of the director"). The claimant argued that, because, in the statute, the lawful order category follows the "for which no penalty has been specifically provided" limitation, that limitation does not apply to it, and thus her claim is not governed by the *Sears*' "gravamen" test.

A different ALJ, ALJ Morgan D. Rumler, ruled on the summary judgment motion. ALJ Rumler rejected the claimant's argument that the PALJ's notes constituted an order: "PALJ Purdie's note, summarizing the agreement of the parties reached at the conference, is not an order of Judge Purdie. It is merely a recitation of her understanding of the agreement between the parties."

ALJ Rumler also noted that ALJ Stuber's order to the employer to pay for the medical treatment as stipulated could not serve as a basis for a penalties claim under the statute because "[c]laimant has not alleged a violation of ALJ Stuber's July 14, 1997 Order, and Respondent-insurer began payment of Dr. Lane's treatment pursuant to ALJ Stuber's Order." ALJ Rumler therefore dismissed the claimant's claim for penalties under section 8–43–304(1).

The claimant appealed ALJ Rumler's decision to the Industrial Claim Appeals Office. In her brief to the panel, the claimant did not challenge ALJ Rumler's findings that she did not allege a violation of ALJ Stuber's July 14 Order and that the employer did not violate that order. She also did not raise the issue of whether that order could constitute a "lawful order made by the director or panel" under section 8–43–304(1).

The claimant did argue to the panel that her case did not fall within the scope of *Sears* because, unlike the claimant in that case, she was relying on the category penalizing the person who disobeys a lawful order, a category that appears in the statute after, not before, the limiting phrase "for which no penalty has been specifically provided." The panel rejected this argument, noting that it had already decided this question in an earlier case, *Ahlstrom v. Colorado Compensation Insurance Authority*, W.C. Nos. 3–815–100 *et al.*, (Apr. 15, 1997). In that case, the panel interpreted the *Sears* "gravamen" test to apply even when the ALJ entered an order requiring the payment of medical benefits. Noting that "[w]e know of no published court opinion ... which conflicts with *Sears*," and that "we must follow published opinions of the Court of Appeals," the panel applied the *Sears* test and concluded that "the underlying conduct the claimant seeks to punish is related to the respondents' failure to pay medical benefits" and thus penalties under section 8–43–304(1) were unavailable. The panel therefore affirmed ALJ Rumler's order dismissing the claimant's claim for penalties under section 8–43–304(1).

The claimant appealed to the court of appeals. In her briefs to that court, she does raise as grounds for penalties the employer's

alleged refusal to obey ALJ Stuber's order. However, she does not discuss this order or explain why an order of an ALJ should constitute a "lawful order made by the director or panel." § 8–43–304(1). The court of appeals did not construe the claimant's appeal as raising that issue, but instead interpreted the claimant's claim as "seeking penalties ... for the employer's failure to provide the recommended treatment in violation of the agreement reached in the pre-trial/settlement conference before the PALJ." *Holliday*, 997 P.2d at 1213.

The court of appeals rejected the claimant's argument that penalties under section 8–43–401(2)(a) apply only to *a delay in the payment of medical bills* and not to *the failure or refusal to provide medical treatment* in violation of a stipulation reached before a PALJ. *Id.* at 1213–14. The court of appeals instead agreed with the panel that "the underlying basis for the claimant's penalty request is the employer's failure to provide treatment at its expense" and that such failure was "related to and encompassed within the failure to pay medical benefits." *Id.* at 1214. Thus, the court of appeals reasoned, "even if we assume, without deciding, that the parties' agreement constituted an approved order of the PALJ, ... *Sears* ... remains dispositive authority for the application of [§ ]8–43–401(2)(a) in this matter." *Id.* The court of appeals therefore affirmed the panel's order.

We granted certiorari to determine whether the limiting phrase in section 8–43–304(1) applies to the statute's lawful order category, and to determine whether the claimant is entitled to penalties under that category.[3]

## II. ANALYSIS

We begin by determining whether the phrase "for which no penalty has been specifically provided" modifies the category "fails, neglects, or refuses to obey any lawful order made by the director or panel...." § 8–43–304(1). Construing the statute, we conclude

that it does not. We hold, however, that the claimant is not entitled to penalties because she failed to preserve for appeal the issue of whether the employer violated an order of the panel or the director.

### A. Construction of Section 8–43–304(1)

■ Our goal in construing a statute is to ascertain and give effect to the General Assembly's intent. *Bloomer v. Bd. of County Comm'rs,* 799 P.2d 942, 945 (Colo.1990), *overruled on other grounds by Bertrand v. Bd. of County Comm'rs,* 872 P.2d 223, 226 (Colo. 1994). To determine legislative intent, we look first to the statute's language. *Id.* "Words and phrases [in our statutes] shall be read in context and construed according to the rules of grammar and common usage." § 2–4–101, 1 C.R.S. (2000). "When the plain language of a statute is clear and unambiguous, we will not resort to interpretive rules of statutory construction and we will apply the statute as written." *Vaughan v. McMinn,* 945 P.2d 404, 408 (Colo.1997).

■ The legislature's use of the disjunctive conjunction "or" in section 8–43–304(1) plainly demarcates four different acts giving rise to penalties. *See Bloomer,* 799 P.2d at 946 ("The legislature's use of the disjunctive 'or' demarcates different categories.") The legislature's use of "or" makes clear that the statute penalizes the person who: (1) "violates any provision of [the Workers' Compensation Act]," (2) "does any act prohibited thereby," (3) "fails or refuses to perform any duty lawfully enjoined within the time prescribed by the director or panel, for which no penalty has been specifically provided," or (4) "fails, neglects, or refuses to obey any lawful order made by the director or panel or any judgment or decree made by any court as provided by said articles." § 8–43–304(1).

Any employer or insurer, or any officer or agent of either, or any employee, or any other person *who violates* any provision of articles 40–47 of this title, *or does any act* prohibited thereby, *or fails or refuses to*

---

**3.** The precise issue on which we granted certiorari was, "Whether the court of appeals erred in holding that any violation of any order concerning medical benefits can *only* be penalized under C.R.S. section 8–43–401(2), which imposes pen-

alties for willfully delaying the 'payment' of medical bills, rather than under the general penalty statute, which imposes penalties for the violation of any 'lawful order.' " (Emphasis in original.)

*perform any duty lawfully enjoined* within the time prescribed by the director or panel, *for which no penalty has been specifically provided, or fails, neglects, or refuses to obey any lawful order made by the director or panel* or any judgment or decree made by any court as provided by said articles shall be subject to such order being reduced to judgment by a court of competent jurisdiction and shall also be punished by a fine of not more than five hundred dollars per day for each such offense, seventy-five percent payable to the aggrieved party and twenty-five percent to the subsequent injury fund created in section 8–46–101.

§ 8–43–304(1) (emphasis added).

■ Consistent with the statute's directive, penalties for engaging in the third prohibited category of conduct—failing or refusing to perform any duty lawfully enjoined [4] within applicable time limits—are available under the statute only where no penalty is elsewhere specifically provided in the Workers' Compensation Act. In contrast, penalties for engaging in the fourth type of conduct—failing, neglecting, or refusing to obey a lawful order of the director or panel—are not so limited. Thus, penalties under the statute for failing, neglecting, or refusing to obey a lawful order of the director or panel are available whether or not other penalties are elsewhere specifically provided. Had the General Assembly intended the phrase "for which no penalty has been specifically provided" to modify the "lawful order" category, it would have placed this limiting phrase after that category, rather than before it, or would have repeated it.

■ Thus, because the limiting phrase refers to the third category of conduct but not the fourth, the General Assembly considered the violation of a statutory provision or an administrative mandate to be a less egregious wrong than disregarding a tribunal's lawful order. We conclude that, by placing the limiting phrase "for which no penalty has been specifically provided" before the "lawful order" category, and also by separating the two with a comma followed by the disjunctive conjunction "or," the General Assembly plainly expressed its intent, "according to the rules of grammar and common usage," § 2–4–101, that the limiting phrase not apply to the fourth "lawful order" category.[5] Thus, we hold that penalties under section 8–43–304(1) for failing, neglecting, or refusing to obey "any lawful order made by the director or panel or any judgment or decree made by any court as provided by [the Workers' Compensation Act]" are available even though penalties for such conduct are elsewhere spe-

---

4. We note that, for purposes of distinguishing the third type of conduct from the fourth type, the words "any duty enjoined" in the third clause do not refer to a legal injunction, which would be a "lawful order" under the fourth clause. "[The word] 'enjoin' has two basic meanings, each the exact opposite of the other." Bryan A. Garner, *A Dictionary of Modern Legal Usage* 316 (2d ed.1995). In the first, positive sense, "enjoin" means to prescribe or mandate. *Id.; Black's Law Dictionary* 550 (7th ed.1999). In the second, negative sense, "enjoin" means to prohibit, to forbid, or to restrain someone by court order. *Id.* The former sense of enjoin, meaning to prescribe or mandate, is less common today than the latter. When, however, the phrase "any duty lawfully enjoined" first appeared in the statute, the first sense was more common. The phrase appeared in the statute in the year 1915 and has not been modified since. *See* Laws 1915, p. 560, § 85. For examples of the use of "enjoin" at that time, *see, e.g., Louden Irrigating Canal & Reservoir Co. v. City of Berthoud*, 57 Colo. 374, 378, 140 P. 802, 804 (1914) ("The decree entered by the court ... is as follows: ... 'the proper officers enjoined with the duty of distribution of water in said water district shall at all times be governed by this decree.' "); *County Comm'rs v. Union Pac. R.R. Co.*, 63 Colo. 143, 148, 165 P. 244, 246 (1917) ("[C]ounty officials in an effort to discharge all of their public duties pursuant to ... provisions of the law enjoined upon them ... had been obliged from time to time to incur necessary indebtedness."). Thus, in the present case, we do not construe the legislature's use of the words "any duty lawfully enjoined" as referring to a legal injunction, but instead as referring to a duty mandated under the Act.

5. Because the language of the statute is unambiguous on this point, we do not resort to interpretive rules of statutory construction and thus do not address the parties' arguments regarding the effect of various rules of statutory construction, such as the "last antecedent rule," the rule that a specific provision prevails over a more general statement, and *inclusio/expressio unius est exclusio alterius* (maxim that the inclusion, or expression, of one thing implies the exclusion of the other, or of the alternative). Garner, *supra*, at 432.

cifically provided in the Workers' Compensation Act. To the extent that *Sears* and decisions of the panel following it have held otherwise, we expressly overrule them.[6]

Lastly, we note that our statutory reading is supported by our reasoning in a case involving a different field of law but which involved statutory interpretation of a limiting phrase. In *Bloomer*, the issue was whether section 24–10–106(1)(d), 10A C.R.S. (1988) waived counties' sovereign immunity in suits concerning the construction and maintenance of county roads. Resolution of that issue required us to determine the relationship between different clauses in the first sentence of that section.[7] We noted that "[t]he legislature's use of the disjunctive 'or' demarcates different categories" and that, in that case, "the disjunctive 'or' distinctly marks the [four] categories" in the statute. *Bloomer*, 799 P.2d at 946. As in this case, because the statute in *Bloomer*, "according to the rules of grammar and common usage," § 2–4–101, was not reasonably susceptible to more than one interpretation, we did not need to resort to interpretive rules of statutory construction. *Id.* at 945. Thus, our conclusion that the plain language of section 8–43–304(1) creates four categories of acts, the fourth of which is not modified by the limiting phrase "for which no penalty has been specifically provided," is supported by our reasoning in *Bloomer*.

Having held that the penalties available under section 8–43–304(1) for failing, neglecting, or refusing to obey any lawful order made by the director or panel are available to the claimant here, we turn to the question of whether the employer in this case failed, neglected, or refused to obey any such order.

### B. Application

The employer claims it is not liable under section 8–43–304(1) because it has not failed, neglected, or refused to obey any lawful order made by the director or panel. On the other hand, the claimant argues that the employer has failed, neglected, or refused to obey two such orders. We agree with the employer.

The first document that the claimant argues constitutes a "lawful order made by the director or panel" for purposes of section 8–43–304(1) is the PALJ's summary conference sheet. Under the Act, an order of a PALJ is an order of the director. § 8–43–207.5(3). Thus, if the PALJ's notations on the summary conference sheet constitute an order of the PALJ, and the employer failed, neglected, or refused to obey that order, the claimant is entitled to penalties under section 8–43–304(1).

The claimant argues that the summary conference sheet is an order because the Act defines "order" broadly: " 'Order' means and includes any decision, finding and award, direction, rule, regulation, *or other determination* ...." § 8–40–201(15), 3 C.R.S. (2000) (emphasis added). The claimant relies on language in one of our cases in which we noted that "court order has been broadly defined in case law as any direction of a court not contained or included in a judgment." *C. v. Dist. Court*, 188 Colo. 437, 441, 535 P.2d 1117, 1119 (1975).

We find the quoted language in *C. v. District Court* inapposite. That case involved the question of whether a juvenile court judge's directive was an "order of the court" for purposes of the Children's Code. *Id.* at 440–41, 535 P.2d at 1118–19. Because the Code did not define "order," we turned to

---

**6.** We note, however, that our case does not concern the effect of the limiting phrase on the first two categories of conduct and we therefore express no opinion on this issue.

**7.** That sentence read:

[Sovereign immunity is waived by a public entity in an action for injuries resulting from] [a] dangerous condition of a public highway, road, or street which physically interferes with the movement of traffic on the paved portion, if paved, or on the portion customarily used for travel by motor vehicles, if unpaved, of any public highway, road, street, or sidewalk within the corporate limits of any municipality, or of any highway which is a part of the federal interstate highway system or the federal primary highway system, or of any highway which is a part of the federal secondary highway system, or of any highway which is a part of the state highway system on that portion of such highway, road, street, or sidewalk which was designed and intended for public travel or parking thereon.

§ 24–10–106(1)(d), 10A C.R.S. (1988).

case law from other jurisdictions to assist us in defining the term. *Id.* at 441, 535 P.2d at 1119. As noted above, however, the Workers' Compensation Act does define the term "order." *See* § 8–40–201(15).

The employer argues that the PALJ's notes do not constitute a "decision, finding and award, direction, rule, regulation, or other determination" of the PALJ because the PALJ did not, by her notes, resolve or determine anything. Instead, the employer claims, it was the parties who came to an agreement regarding evaluation and treatment, and thus the PALJ's handwritten notes, on her own conference summary sheet, merely reflect the PALJ's personal understanding of the parties' agreement. Moreover, observes the employer, the parties cannot be bound by the PALJ's notes in the summary sheet because those notes were never communicated to them. The sheet only came to the attention of the parties because the attorney general on behalf of the division attached it to a motion to quash a subpoena issued to the PALJ.

 The handwritten, shorthand words scribbled in the "notes" section of the PALJ's conference summary sheet did not resolve or determine any matter in this case. Thus, we conclude that the PALJ's notes do not constitute an order of that PALJ.

The claimant also relies on a second document to establish her section 8–43–304(1) claim for disobeying a lawful order. She alleges that the employer violated ALJ Stuber's July 14, 1997 order requiring the employer to "pay for the treatment provided by Dr. Lane, as stipulated." We are unable to reach this issue, however, because it has not been properly preserved for appeal.

ALJ Rumler expressly found in her order that "[c]laimant has not alleged a violation of ALJ Stuber's July 14, 1997 Order, and Respondent-insurer began payment of Dr. Lane's treatment pursuant to ALJ Stuber's Order." On the record before us, the claimant did not, in her appeal to the panel, challenge ALJ Rumler's finding that the employer complied with this order. She did not raise the issue of whether ALJ Stuber's order, if violated, could constitute a "lawful order made by the director or panel" for

purposes of section 8–43–304(1). Thus, neither the issue of whether ALJ Rumler erred in finding that the employer complied with that order nor the issue of whether that order could constitute a "lawful order" for purposes of section 8–43–304(1) is before us, nor were these issues before the court of appeals. The claimant's claim for penalties against the employer under section 8–43–304(1) must therefore be dismissed.

## III. DISPOSITION

We vacate the court of appeals' decision in *Holliday v. Industrial Claim Appeals Office,* 997 P.2d 1212 (Colo.App.1999), and dismiss the claimant's appeal.